**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

_____

| | | |
|---|---|---|
| **ALFREDO GUEVARA-MORALES,** | § | |
| **AARON MARTINEZ-MENDOZA,** | § | |
| **EFREN MENDOZA-JUAREZ,** | § | |
| **EDUARDO MOSQUEDA-CASTILLO,** | § | |
| **CARLO AZAEL ZAVALA–RAMIREZ,** | § | |
| **and JUAN MOSQUEDA-GUERRERO,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:19-CV-52** |
| | § | |
| **SANCHEZ FORESTRY, INC. d/b/a** | § | |
| **ABEL SANCHEZ FORESTRY SERVICE,** | § | |
| **ABEL SANCHEZ FORESTRY SERVICE,** | § | |
| **and ABEL SANCHEZ, individually and** | § | |
| **d/b/a ABEL SANCHEZ FORESTRY** | § | |
| **SERVICE,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |

_____

## PLAINTIFFS' FIRST AMENDED COMPLAINT

1.      Plaintiffs Alfredo Guevara-Morales, Aaron Martinez-Mendoza, Efren Mendoza-Juarez,

Eduardo Mosqueda-Castillo, Carlo Azael Zavala-Ramirez, and Juan Mosqueda-Guerrero

("Plaintiffs"), workers from the Mexico, bring this action for damages and declaratory relief

against their former employers, Defendant Sanchez Forestry, Inc. d/b/a Abel Sanchez Forestry

Service, Defendant Abel Sanchez Forestry Service, and Defendant Abel Sanchez, individually

and d/b/a Abel Sanchez Forestry Service ("Defendants"), for violations of Plaintiffs' rights under

the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 *et*

*seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Trafficking Victims

Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1589 *et seq.*, Texas statutes providing

for liability for forced labor, Tex. Civ. Prac. & Rem. Code §§ 98.001–.006 and Tex. Penal Code §§ 20A.01–.04, and for breach of Plaintiffs' employment contracts and for fraud.

2.      In late 2016, Defendants recruited Plaintiffs in Mexico to work for Defendants as tree planters in and around Jasper, Texas. Defendants misled Plaintiffs regarding the terms and conditions of employment, including the amount of wages that would be paid. In reliance on these promises, Plaintiffs obtained H-2B visas and traveled from their homes in Mexico to Jasper, Texas, incurring significant expenses. In the United States, Defendants confiscated Plaintiffs' passports and visas and made threats of serious harm to ensure that Plaintiffs would not leave their employment. Defendants also broke the promises made to Plaintiffs at the time of recruitment about housing, wages, and deductions from pay, resulting in Defendants' failure to pay Plaintiffs the minimum wage, overtime, or the higher prevailing wage required by the H-2B program.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

4.      Plaintiffs' federal claims are authorized and instituted pursuant to 29 U.S.C. § 216(b) (FLSA), 29 U.S.C. § 1854(a) (AWPA), and 18 U.S.C. § 1595(a) (TVPRA).

5.      This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

6.      Defendants' principal place of business is in Jasper County, Texas, and a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in or around Jasper County, Texas.

7.      This Court has personal jurisdiction over Defendants, and venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1) and 29 U.S.C. § 1854(a).

## PARTIES

8.      Plaintiffs are six non-immigrant temporary H-2B forestry workers who primarily speak and read Spanish.

9.      Plaintiffs were lawfully admitted to the United States from Mexico on temporary work visas pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

10.     Defendant Sanchez Forestry, Inc. d/b/a Abel Sanchez Forestry Services (hereinafter "Sanchez Forestry") is a Texas corporation whose principal place of business is in Jasper, Jasper County, Texas. In 2016 and 2017, Sanchez Forestry did business as Abel Sanchez Forestry Service.

11.     Defendant Abel Sanchez Forestry Service (hereinafter "ASFS") is a sole proprietorship owned by Defendant Abel Sanchez.

12.     Defendant Abel Sanchez is a natural person who resides in Jasper, Jasper County, Texas. In 2016 and 2017, Abel Sanchez did business as Defendant ASFS.

13.     Defendant Abel Sanchez is a director and the president of Defendant Sanchez Forestry and a shareholder in it.

14.     In 2016 and 2017, Defendant Sanchez Forestry carried on its business through its officers, directors, employees, and agents, including Defendant Sanchez and Miguel Herrera, who recruited Plaintiffs and was their day-to-day supervisor.

## FACTS

### A.      Defendants' Participation in the Federal H-2B Program

15.     The H-2B program allows U.S. employers to import foreign workers to perform temporary non-agricultural labor, including forestry labor.

16.     An employer may import H-2B workers only if the U.S. Department of Labor ("DOL") certifies that (1) there are insufficient available workers within the United States to perform the jobs; and (2) the employment of the foreign workers will not adversely affect the wages and working conditions of similarly-situated U.S. workers.

17.     To obtain certification to import workers under this program, an employer must submit an Application for Temporary Employment Certification, Form ETA-9142B, to DOL.

18.     Form ETA-9142B requires the employer to set forth the terms and conditions of work that the employer is offering to foreign workers.

19.     At the time an employer submits the Form ETA-9142B, the employer must submit a "job order" to the state workforce agency that complies with the requirements of and contains all of the information required by 20 C.F.R. § 655.18.

20.     Defendant ASFS submitted an initial temporary labor certification application to DOL for the 2016-2017 season seeking admission of H-2B workers for employment, primarily as tree planters, from November 23, 2016 to July 1, 2017 and providing workers with an anticipated average of 35 hours of work per week.

21.     Defendant Abel Sanchez signed the Form ETA-9142B on behalf of Defendant ASFS.

22.     By signing the Form ETA-9142B, Defendant Abel Sanchez, on behalf of Defendant ASFS, certified, under penalty of perjury, that Defendant ASFS would abide by the H-2B regulations at 20 C.F.R. §§ 655.00 *et seq.*, including by making the following assurances:

    a.      It would not hold or confiscate employees' passports, visas, or other immigration documents;

      b.     It would pay its H-2B workers the higher of the applicable prevailing wage rate for the work performed or the state, local, or federal minimum wage;

      c.     It would comply with applicable federal, state, and local employment-related laws and regulations, including employment-related health and safety laws;

      d.     It would provide a copy of the job order to its H-2B workers in a language understood by the workers; and

      e.     It would not make any deductions from its H-2B workers' pay not disclosed in the job order.

23.     DOL accepted Defendant ASFS's Form ETA-9142B for the 2016-2017 season and granted it permission to begin the process of recruiting and hiring H-2B foreign laborers.

24.     In connection with this application for alien labor certification, Defendant ASFS also submitted to DOL a Form ETA 9141, Application for Prevailing Wage Determination.

25.     Defendant Abel Sanchez signed the Form ETA 9141 on behalf of Defendant ASFS.

26.     DOL approved this application, and it made the determination that Defendant ASFS had to pay any H-2B workers so imported the prevailing wages of $16.74 per hour for work in Jasper, San Augustine, and Sabine Counties, and $16.77 per hour for work in Newton County.

27.     As part of this H-2B application process, Defendant ASFS submitted a job order to the Texas Workforce Commission ("TWC") that was required to contain the material terms and conditions of employment, including employer obligations and assurances.

28.     This job order set forth the following terms and conditions of employment, among others:

      a.     35 hours of work per week;

      b.     Straight time pay of $16.77 per hour and overtime pay of $25.16 per hour;

    c.      No deductions other than those required by law, and a housing deduction if the worker chose the voluntary housing option;

    d.      Reimbursement via check to the worker in the first workweek of all visa, visa-processing, border crossing, and other related fees;

    e.      Reimbursement, upon the worker's completion of 50% of the contract period, of the worker's transportation and daily subsistence expenses from the place of the worker's recruitment to the place of work; and

    f.      Employer-provided tools, supplies, and equipment required to perform the worker's assigned duties without deposit or charge.

29.    Defendants never provided Plaintiffs with a copy of this job order.

30.    Based in part on the representations in this Form ETA-9142B and the job order, DOL certified Defendant ASFS's application for temporary employment certification for 24 H-2B workers, and U.S. Customs and Immigration Services issued H-2B visas to Plaintiffs and other Mexican workers.

### B. Defendants' Recruitment of Plaintiffs and Travel to Texas

31.    Defendants, through their agents, recruited approximately 24 H-2B workers in Mexico, including Plaintiffs, for positions offered in the job order described above for the 2016-2017 season.

32.    In late 2016, Defendants' employee, Miguel Herrera, recruited Plaintiffs in Mexico to work for Defendants with promises of work planting and caring for trees.

33.    When Miguel Herrera recruited Plaintiffs, he did not have a farm labor contractor certificate of registration issued by DOL authorizing him to perform the farm labor contracting activity of recruiting agricultural workers.

34.     Based on Miguel Herrera's representations, Plaintiffs traveled in late January 2017 from their homes in Guanajuato to Monterrey, Mexico, where they met with representatives of a company ("Company") that assisted them in obtaining visas at the U.S. Consulate, including with consular interviews.

35.     When Plaintiffs met with these representatives of the Company, the representatives provided Plaintiffs with a document written in Spanish and partially in English entitled "Condiciones de Trabajo" ("Work Conditions").

36.     The Work Conditions stated that Plaintiffs would be paid $16.77 per hour for non-overtime work and $25.16 per hour for overtime work.

37.     The Work Conditions also stated that Plaintiffs would work in the planting and care of pine seedlings, including applying herbicides.

38.     The Work Conditions stated that the offered work opportunity was for six days of work per week, at seven and one-half hours per day (i.e., for a total of 45 hours per week).

39.     The Work Conditions also stated that workers would be charged $40 per week for "voluntary" housing.

40.     The Work Conditions stated that the housing would comply with the requirements of state and local law for rental housing.

41.     The Work Conditions further stated that workers had to pay their own transportation costs from their homes in Mexico to the place of work.

42.     The Work Conditions additionally required Plaintiffs to provide their own rubber boots.

43.     Many of the work conditions set forth in paragraphs 35–42 above contradict and provide less favorable terms of employment to Plaintiffs than the material terms and conditions of

employment that Defendant ASFS was required to offer, and did offer, to Plaintiffs on its Form ETA-9142B and job order.

44.     The Work Conditions do not include or summarize all the material terms and conditions of Plaintiffs' employment, including employer obligations and assurances, as set forth in Defendant ASFS's Form ETA-9142B.

45.     At the time that Defendants recruited Plaintiffs, Defendants knew or should have known that they had no intention of complying with many of the promises they were making about Plaintiffs' employment, such as the promises about the wage rates to be paid and the conditions of the housing.

46.     Defendants made promises in the job order, as well as other promises identified herein, to fraudulently induce Plaintiffs into accepting employment with Defendants.

47.     Plaintiffs were not given at the time of their recruitment disclosures in writing containing the specific locations of the worksites.

48.     By transmitting the Work Conditions to Plaintiffs and assisting them in consular processing, the Company, through its representatives, engaged in "farm labor contracting activities" on behalf of Defendants within the meaning of the AWPA.

49.     Neither the Company nor its representatives had farm labor contractor certificates of registration issued by DOL authorizing them to perform farm labor contracting activities such as recruiting migrant agricultural workers.

50.     Through the Company's representatives, Defendants offered employment in tree planting and associated tasks in and around Jasper, Texas.

51.     Plaintiffs accepted Defendants' offer of employment and left Mexico to travel to Texas to work for Defendants.

52.     In accepting employment, Plaintiffs reasonably relied to their detriment on Defendants' misrepresentations, material omissions, and false and misleading information regarding the actual and the minimum required terms of their contracts of employment under the H-2B program.

53.     Defendants knew or should have known that Plaintiffs would rely on, and in fact did rely on, Defendants' materially false, misleading, and incomplete information and representations.

54.     In accepting employment, Plaintiffs traveled approximately 1,000 miles from their homes in Mexico to Jasper, Texas, incurring fees and costs, including passport fees, transportation costs, lodging costs, and daily subsistence expenses, while traveling, which for some Plaintiffs ranged between about 1,000 and about 1,600 pesos for transportation to Monterrey alone.

55.     Each Plaintiff had to pay about $75 for transportation from Monterrey to Jasper.

56.     But for Plaintiffs' reliance, Plaintiffs would not have incurred the expenses described in paragraphs 54–55 above.

57.     The expenses incurred by Plaintiffs described in paragraphs 54–55 above were necessary to Plaintiffs' employment with Defendants.

58.     The expenses incurred by Plaintiffs described in paragraphs 54–55 above were primarily for the benefit and convenience of Defendants.

59.     The expenses described in paragraphs 54–55 above functioned as deductions from Plaintiffs' wages during their first workweek with Defendants in 2017 when Defendants failed to reimburse Plaintiffs for these expenses during that first workweek.

60.     Plaintiffs Aaron Martinez-Mendoza, Eduardo Mosqueda-Castillo, Carlo Azael Zavala-Ramirez, and Juan Mosqueda-Guerrero borrowed money to pay for, among other things, the expenses described in paragraphs 54–55 above.

61.     Plaintiffs arrived in Jasper, Texas on or around February 2 or 3, 2017 and commenced work planting tree saplings for Defendants the next day.

C.      *Plaintiffs' Conditions of Work*

62.     The Form ETA-9142B, and the job order and Work Conditions to the extent that they offered terms better for Plaintiffs than those set forth on Form ETA-9142B, constituted the terms of the employment contract that Defendant ASFS offered to Plaintiffs and of the working arrangement between the parties.

63.     Defendant ASFS offered, and Plaintiffs accepted, the following terms, among others, under the employment contract and working arrangement:

a.      Pay at a rate of $16.77 per hour for the first 40 hours of work per workweek and of $25.16 per hour for overtime hours over 40 hours in a workweek;

b.      Payment on a piece rate only when disclosed on Form ETA-9142B and consistent with any determination made pursuant to the H-2B regulations of the applicable piece rate;

c.      Payment once every week;

d.      Payment of wages free and clear;

e.      Reimbursement, once Plaintiffs had completed 50% of the contract's term, of costs incurred by Plaintiffs for transportation and daily subsistence from Plaintiffs' homes in Mexico to Defendants' job site in Jasper, Texas;

f.      Maintenance of accurate and adequate records, as required by the FLSA, the AWPA, and the H-2B regulations, with respect to each Plaintiff's earnings;

g.      A written pay statement furnished to Plaintiffs on or before each payday showing all information required by the FLSA, the AWPA, and the H-2B regulations;

h.      Payment for or reimbursement of, in the first workweek, of all of Plaintiffs' visa, visa-processing, border-crossing, and other related expenses;

i.      Reimbursement of, in the first workweek, Plaintiffs' travel, visa, visa-processing, border-crossing, and other related expenses to the extent that the failure to reimburse such expenses would result in Plaintiffs not earning the minimum and overtime wages mandated by the FLSA and the prevailing wage mandated by their contracts of employment;

j.      Deductions from pay only when required by law or disclosed in the job order;

k.      Provision of all required tools, supplies, and equipment without deposit or charge;

l.      Provision to the worker of a copy of the job order no later than the date the worker applied for an H-2B visa;

m.      Posting at the place of employment the notices of workers' rights required to be posted by the FLSA, the AWPA, and the H-2B regulations;

n.      A prohibition on the payment of any kind by the worker to the employer or its attorneys, agents, and employees for any activity related to obtaining H-2B labor certification or employment, and actual compliance with this prohibition;

o.      A contractual prohibition in writing between the employer and any agent or recruiter whom the employer engaged, directly or indirectly, in the recruitment of H-2B workers on seeking or receiving payments or other compensation from prospective workers; and

p.      Compliance with all applicable federal, state, and local employment-related laws and regulations, including health and safety laws and the TVPRA's prohibition

against employers or their agents knowingly holding, destroying, or confiscating workers' passports, visas, or other immigration documents.

64.     Facts demonstrating that Defendant Abel Sanchez was Plaintiffs' employer include the following:

a.     Defendant Abel Sanchez possessed the authority to hire Plaintiffs and authorized their recruitment and hiring;

b.     Defendant Abel Sanchez possessed the authority to fire Plaintiffs and did in fact fire Plaintiffs Eduardo Mosqueda-Castillo and Alfredo Guevara-Morales;

c.     Defendant Abel Sanchez possessed and exercised the authority to devise and carry out the employment rules and policies, such as pay rates, applicable to Plaintiffs;

d.     Defendant Abel Sanchez possessed and exercised authority regarding Plaintiffs' scheduling, timekeeping, payroll, and discipline; and

e.     Upon information and belief, Defendant Abel Sanchez supervised the work of Plaintiffs' direct day-to-day supervisor, Miguel Herrera.

65.     In undertaking the actions described in the preceding paragraph, Defendant Abel Sanchez often and typically acted in the name of "Abel Sanchez Forestry Service."

66.     In undertaking the actions described in the preceding two paragraphs, Defendant Abel Sanchez also acted as the authorized manager, owner, and agent of Defendant Sanchez Forestry.

67.     Defendant Sanchez Forestry acted directly or indirectly in the interest of Defendant ASFS and Defendant Abel Sanchez and exercised control of the terms and conditions of Plaintiffs' employment by, among other things, issuing paychecks to Plaintiffs.

68.     At the time that Defendants employed Plaintiffs, Plaintiffs were engaged in the production of trees that moved in interstate commerce.

69.     At the time that Defendants employed Plaintiffs and continuing each year to the present, Defendants employed two or more employees who handled and worked with goods and materials that moved in or were produced for interstate commerce, including pine tree saplings, herbicides, fertilizers, machinery, tools, and equipment.

70.     At the time that Defendants employed Plaintiffs and continuing each year to the present, Defendants, upon information and belief, had an annual gross volume of sales made or business done of no less than $500,000.

71.     Plaintiffs began working for Defendants in and around Jasper, Texas on or about February 3 or 4, 2017.

72.     Plaintiffs mostly worked planting pine saplings and cutting pine trees, although Plaintiffs also performed other tasks relating to the care of trees, including applying, on Defendants' orders, a liquid that Plaintiffs understood to be a pesticide.

73.     Defendants did not, upon information and belief, post at any of Plaintiffs' work sites notices setting forth Plaintiffs' rights under the FLSA, the AWPA, and the H-2B program.

74.     Plaintiffs Aaron Martinez-Mendoza and Carlo Azael Zavala-Ramirez worked for Defendants until approximately the middle of March, 2017.

75.     Plaintiffs Alfredo Guevara-Morales, Efren Mendoza-Juarez, Eduardo Mosqueda-Castillo, and Juan Mosqueda-Guerrero worked for Defendants until approximately the end of March, 2017.

76.     In each workweek, Defendants caused Plaintiffs to work in excess of 40 hours per week, and Plaintiffs regularly worked between approximately 80 and 94 hours per week during their six- to eight-week stint of employment by Defendants.

77.     Plaintiffs typically started each day by being driven by Miguel Herrera from their housing to a small warehouse or greenhouse to load up pine saplings. Miguel Herrera then drove Plaintiffs to the work site.

78.     Plaintiffs often arrived at the work site before there was light out, and they typically worked without a lunch break until it got dark.

79.     Plaintiffs were supervised in their day-to-day work by Defendants' employee, Miguel Herrera, who was at the work sites with them.

80.     In each workweek, Defendants paid Plaintiffs wages ranging between approximately $170 and approximately $500, after making illegal deductions. This resulted in Defendants paying Plaintiffs hourly wages of approximately $6.25 per hour down to as little as $1.81 per hour.

81.     Defendants often paid Plaintiffs on a piece rate, not disclosed in the job order, which Plaintiffs understood to be based on the number of tree saplings planted per acre.

82.     Before deductions, in each workweek Defendants paid Plaintiffs gross hourly wages that were less than the federal minimum wage of $7.25 per hour.

83.     Plaintiffs were ready to perform, and did in fact perform, all their material obligations under their contract and working arrangement with Defendants.

84.     Upon information and belief, Defendants deducted a charge for housing from some Plaintiffs' pay.

85.     As set forth more fully in paragraphs 99–113 below, the amounts deducted for housing were unreasonable because they were higher than the market value of such housing and because the housing, among other things, was overcrowded, lacked water or electricity services for long periods of time, and failed to comply with applicable federal and state safety and health standards for housing for agricultural workers.

86.     Defendants did not record housing and other deductions on the paychecks that they furnished to Plaintiffs.

87.     The amounts deducted from Plaintiffs' pay were not properly disclosed on the job order (Form ETA-9142B) governing Plaintiffs' employment.

88.     Defendants, upon information and belief, failed to maintain complete and accurate records of Plaintiffs' hours of work and compensation as required by the FLSA, the AWPA, and the H-2B regulations.

89.     Defendants did not provide Plaintiffs with itemized earnings statements that included all information required to be included by the FLSA, the AWPA, and the H-2B regulations, and in fact furnished Plaintiffs with paychecks that stated only the net amounts paid.

90.     As set forth above, Defendants did not pay Plaintiffs the wages owed to them pursuant to the FLSA and the H-2B regulations, and thus failed to pay Plaintiffs their wages owed when due.

91.     Plaintiffs complained to Miguel Herrera about not being paid as promised.

92.     Each workday, Miguel Herrera transported Plaintiffs and other workers from their housing to the work sites in a van.

93.     Upon information and belief, Defendants violated the Tex. Transp. Code §§ 647.001– .019 by, among other things, transporting Plaintiffs in vans driven by Miguel Herrera without having on file a doctor's certificate showing that a physician had given a physical examination to

Miguel Herrera and had certified that he was physically qualified to operate a motor vehicle used to transport migrant agricultural workers.

94.     Defendants did not, upon information and belief, have farm labor contractor certificates of registration authorizing its drivers of the vans to transport migrant agricultural workers.

95.     Miguel Herrera did not, upon information and belief, have a farm labor contractor certificate of registration authorizing him to transport migrant agricultural workers.

96.     Defendants did not, upon information and belief, carry with them farm labor contractor certificates of registration while engaging in farm labor contracting activities.

97.     There were no portable bathrooms at the worksites where Plaintiffs worked, and Defendants did not provide Plaintiffs with potable drinking water dispensed by single-use cups.

98.     Defendants did not train any Plaintiffs on handling or applying pesticides.

### D.      Housing Conditions

99.     The housing that Defendants provided to Plaintiffs was not licensed by the Texas Department of Housing and Community Affairs before Defendants housed Plaintiffs there.

100.    Defendants were not authorized by DOL to house migrant agricultural workers, nor did Defendants notify DOL that they intended to use or cause to be used a facility to house Plaintiffs.

101.    Defendants failed to have an appropriate federal, state, or local agency certify that the housing complied with applicable health and safety standards for housing before allowing Plaintiffs and other migrant agricultural workers to occupy the housing.

102.    Defendants did not post in the housing a certificate setting forth the terms and conditions of Plaintiffs' occupancy of the housing.

103.    Defendants first housed Plaintiffs in one trailer, and then housed them in a second trailer.

104.    The first trailer had no running water or electricity.

105.    The second trailer was without electricity for several days; when electricity was restored, it did not work in the bedrooms.

106.    The second trailer had no running water for the first few days.

107.    In the second trailer, five workers slept in the living room, three workers slept in one bedroom, and four workers slept in another bedroom.

108.    The second trailer was overcrowded, and the workers, including Plaintiffs, had to sleep close together.

109.    In the second trailer, the workers, including Plaintiffs, slept on mattresses on the floor, and Defendants did not give Plaintiffs bedframes to lift the mattresses at least 12 inches off the floor.

110.    The second trailer had holes in the roof that allowed water to come in when it rained.

111.    The second trailer had no heating, and the rooms would get cold at night.

112.    The second trailer had one bathroom for 13 occupants.

113.    At least one window in the second trailer did not have glass.

### E.       Seizure of Plaintiffs' Passports and Threats Against Plaintiffs

114.    After Plaintiffs received their H-2B visas in Monterrey, Mexico, they traveled with Miguel Herrera to Texas.

115.    After Plaintiffs entered the United States, Miguel Herrera confiscated Plaintiffs' passports and visas.

116.    As set forth in paragraphs 54–55 above, Plaintiffs had to pay for their own transportation from their home towns to Jasper, Texas, and Defendants did not reimburse Plaintiffs for their expenses.

117.    Most Plaintiffs lacked the funds to pay for their inbound costs out of pocket and to pay initial living expenses in the United States, so, to pay these expenses, those Plaintiffs had to take out loans in Mexico of between about 8,000 pesos and 17,000 pesos.

118.    Because Defendants did not timely reimburse Plaintiffs' for Plaintiffs' inbound visa, visa-processing, border crossing, transportation, and daily subsistence costs, and in fact never reimbursed Plaintiffs for these costs, Plaintiffs remained in debt due to the money they had to borrow to pay these costs.

119.    Plaintiffs' supervisor, Miguel Herrera was abusive—constantly yelling at Plaintiffs, swearing at them, calling them names, saying they were worthless, and otherwise humiliating them.

120.    Miguel Herrera often threatened Plaintiffs by telling them that if they tried to leave, he would report them to immigration, which, he said, would prevent Plaintiffs from obtaining another visa in the future.

121.    When threatening to report Plaintiffs to immigration, Miguel Herrera said that they would be put in jail.

122.    Miguel Herrera refused to return Plaintiffs' passports when they requested them.

123.    Miguel Herrera threatened to hit one H-2B worker.

124.    Miguel Herrera told Plaintiffs Efren Mendoza-Juarez, Carlo Azael Zavala-Ramirez, and Juan Mosqueda-Guerrero that if an H-2B worker left, their families would pay.

125.    Miguel Herrera told Plaintiff Carlo Azael Zavala-Ramirez that he would make problems for his family if Plaintiff Carlo Azael Zavala-Ramirez left.

126.    Plaintiffs were intimidated, and they believed that Miguel Herrera meant that he would physically harm their families if they left.

127.    Defendants never returned Plaintiffs' passports or visas, and Plaintiffs worried that, if they left without having their passports and visas, they could get in trouble with the police or immigration and would not be able to get another visa to work in the United States in the future.

128.    In mid-March, Plaintiffs Aaron Martinez-Mendoza and Carlo Azael Zavala-Ramirez could no longer endure either the working and housing conditions or the threats and abuse by Miguel Herrera, so they escaped, taking only their wallets and phones.

129.    Defendants fired Plaintiffs Alfredo Guevara-Morales and Eduardo Mosqueda-Castillo a couple of weeks later, near the end of March.

130.    Plaintiffs Efren Mendoza-Juarez Juan Mosqueda-Guerrero escaped late at night right after Defendants fired Plaintiffs Alfredo Guevara-Morales and Eduardo Mosqueda-Castillo.

131.    When Defendants fired Plaintiff Eduardo Mosqueda-Castillo, he asked Defendant Abel Sanchez to give him back his passport, but Defendant Abel Sanchez refused to do so.

132.    When Defendants fired Plaintiffs Alfredo Guevara-Morales and Eduardo Mosqueda-Castillo, Defendant Abel Sanchez demanded an additional $100 payment for their housing.

133.    The working conditions, including significant underpayment of wages promised and owed, the ramshackle, dilapidated housing, seizure of passports, threats of violence, threats of unlawful use of process by calling immigration (which Miguel Herrera stated would result in imprisonment and deportation), and forced labor constituted a material breach by Defendants of their employment contract and working arrangement with Plaintiffs.

134.    Defendants knowingly financially benefitted by participating in a venture, along with Miguel Herrera, that involved receiving Plaintiffs' forced labor.

135.    Defendants' conduct complained of herein was malicious, oppressive, and in reckless disregard of Plaintiffs' rights.

136.    All actions and omissions complained of herein were undertaken by Defendants directly or through their authorized agents and employees, including Miguel Herrera, acting within the scope of their authority.

## COUNT I: FAIR LABOR STANDARDS ACT

137.    Plaintiffs reassert and incorporate by reference the allegations set forth above.

138.    While working for Defendants, Plaintiffs were "employed" as "employees" by Defendants, who were their "employer[s]" within the meaning of the FLSA.

139.    While employed by Defendants, Plaintiffs were engaged in the production of goods for commerce, or were employed in Defendants' enterprise engaged in commerce or the production of goods for commerce, within the meaning of the FLSA.

140.    In 2017, Defendants failed to pay Plaintiffs the federally-mandated minimum wage of $7.25 per hour for all hours that Plaintiffs worked for Defendants in each workweek.

141.    Defendants failed to pay Plaintiffs the federally-mandated minimum wage both before and after impermissible deductions for housing and other items.

142.    In 2018, Defendants failed to pay Plaintiffs overtime equal to one and one-half times their regular hourly rates of pay for each hour Plaintiffs worked over 40 hours in a workweek.

143.    By failing to pay Plaintiffs minimum wages in each work week, Defendants violated Plaintiffs' rights under the FLSA, 29 U.S.C. §§ 206 and 207, for which Plaintiffs are entitled to their unpaid minimum wages, their unpaid overtime compensation, and an equal amount in liquidated damages, plus costs and reasonable attorney's fees, pursuant to 29 U.S.C. § 216(b).

## COUNT II: MIGRANT AND SEASONAL AGRICULTURAL
## WORKER PROTECTION ACT

144.    Plaintiffs reassert and incorporate by reference the allegations set forth above.

145.     When recruited and employed by Defendants, Plaintiffs were "migrant agricultural workers" within the meaning of the AWPA, 29 U.S.C. § 1802(8).

146.     While recruiting and employing Plaintiffs, Defendants were "farm labor contractors" within the meaning of the AWPA, 29 U.S.C. § 1802(7).

147.     Defendants "employed" Plaintiffs within the meaning of the AWPA, 29 U.S.C. § 1802(5).

148.     Defendants recruited Plaintiffs to work in, and in fact employed Plaintiffs in, "agricultural employment" as defined by the AWPA, 29 U.S.C. § 1802(3).

149.     Defendants "owned or controlled facilities," within the meaning of the AWPA, 29 U.S.C. § 1823(a), used to house Plaintiffs.

150.     While living in the housing provided by Defendants, Plaintiffs were "migrant agricultural workers" within the meaning of the Texas Migrant Labor Housing Facilities Act ("TMLHFA"), Tex. Gov't Code § 2306.921(2), and its accompanying regulations.

151.     The housing Defendants provided to each Plaintiff was a "migrant labor housing facility" within the meaning of the TMLHFA, Tex. Gov't Code § 2306.921(3), and its accompanying regulations.

152.     The structures in which Defendants housed Plaintiffs were "facilities" within the meaning of the TMLHFA, Tex. Gov't Code § 2306.921(1), and its accompanying regulations.

153.     Defendants intentionally violated Plaintiffs' rights under the AWPA by:

    a.     Hiring, employing, or using an unregistered farm labor contractor or farm contractor employee to recruit and transport Plaintiffs, 29 U.S.C. § 1811(b);

    b.     Failing to carry a farm labor contractor certificate of registration while engaging in farm labor contracting activities, 29 U.S.C. § 1811(c);

c.      Failing to provide written disclosures to Plaintiffs containing the information required by the AWPA at the time of Plaintiffs' recruitment, 29 U.S.C. § 1821(a);

d.      Failing to post a notice at the place of employment setting forth Plaintiffs' rights under the AWPA, 29 U.S.C. § 1821(b);

e.      Failing to post the terms of occupancy of the housing provided to Plaintiffs, 29 U.S.C. § 1821(c);

f.      Failing to make, keep, and preserve records of the basis on which wages were paid, the number of hours worked, the total pay period earnings, the specific sums withheld and the purpose of each sum withheld, and the net pay, 29 U.S.C. § 1821(d)(1);

g.      Failing to provide each Plaintiff with itemized pay statements with the information required by the AWPA, 29 U.S.C. § 1821(d)(2);

h.      Knowingly providing false and misleading information to Plaintiffs, 29 U.S.C. § 1821(f);

i.      Failing to provide disclosures containing all of the information required by 29 U.S.C. § 1821(a)-(c) to Plaintiffs, who are not fluent or literate in English, in Spanish, their native language, 29 U.S.C. § 1821(g);

j.      Failing to pay Plaintiffs their wages owed when due, 29 U.S.C. § 1822(a);

k.      Violating the terms of their working arrangement with Plaintiffs without justification, 29 U.S.C. § 1822(c), as set forth, among other places herein, in paragraph 162 below;

l.      Failing to ensure that the housing provided to Plaintiffs complied with health and safety standards pertaining to such housing under federal law, the TMLHFA and its accompanying regulations, and/or local law, *see* 29 U.S.C. § 1823(a);

m.     Failing to have an appropriate federal, state, or local agency certify that housing met applicable safety and health standards for migrant agricultural workers prior to the housing's being occupied by Plaintiffs, and failing to post the certification of compliance with such standards in the housing, 29 U.S.C. § 1823(b)(1);

n.      Failing to post at Plaintiffs' housing a statement showing the terms and conditions of occupancy, 29 U.S.C. 1821(c);

o.      Failing to follow the AWPA's standards for transporting migrant agricultural workers, 29 U.S.C. § 1841(b);

p.      Using a farm labor contractor to supply migrant agricultural workers without taking reasonable steps to determine that the farm labor contractor possessed a valid certificate of registration authorizing the activity for which the contractor was utilized, 29 U.S.C. § 1842; and

q.      Intimidating, threatening, restraining, and discriminating against Plaintiffs for exercising their rights and protections under the AWPA, 29 U.S.C. § 1855.

154.   Plaintiffs suffered damages on account of Defendants' violations of the AWPA.

155.   For each violation of the AWPA, Plaintiffs are entitled to recover their actual damages or up to $500 in statutory damages.

## COUNT III: BREACH OF CONTRACT

156.   Plaintiffs reassert and incorporate by reference the allegations set forth above.

157.   By offering work to Plaintiffs, which Plaintiffs accepted, Defendants entered into valid and enforceable work contracts with Plaintiffs.

158.   While working for Defendants, Plaintiffs were "employed" as "employees" by Defendants, who were their "employers," within the meaning of the H-2B regulations.

159.   Defendant Sanchez Forestry and Defendant Abel Sanchez acted as "joint employers," with Defendant ASFS, of Plaintiffs within the meaning of the H-2B regulations.

160.   The work contracts formed by the DOL-approved labor certifications incorporated applicable federal, state, and local employment-related law and regulations and included a promise by Defendants, the employers of the H-2B workers, to abide by such law. As such, the contracts obligated Defendants to pay the prevailing wage rates and overtime rates, prevented them from making deductions for unreasonable housing costs and the costs of expenses paid by Defendants to secure visas for their employees, and from making deductions not specified in the temporary labor certification application.

161.   Plaintiffs performed all work they were called upon by Defendants to perform and met their material contractual obligations of employment.

162.   Defendants failed to perform their material obligations under their employment contracts with each Plaintiff and materially breached their contracts with each Plaintiff when Defendants, among other things:

    a.   Failed to pay Plaintiffs at a rate of $16.77 per hour for the first 40 hours of work per workweek and $25.16 per hour for overtime hours over 40 hours in a workweek;

    b.   Failed to pay Plaintiffs at least the federal minimum wage of $7.25 per hour for each hour worked in each discrete workweek;

c.      Required Plaintiffs to work on a piece rate, not disclosed in or authorized by the job order, based on how many acres of trees planted;

d.      Failed to pay Plaintiffs all wages owed on a weekly basis;

e.      Improperly deducted sums from Plaintiffs' weekly wages that were not disclosed in the job order, such as for housing that did not meet applicable applicability standards, and for penalties in amounts like $50 on account of supposed slow work,

f.      Failed to pay Plaintiffs wages free and clear, because Plaintiffs were required to pay kickbacks of sums such as $50 for being brought to the United States under H-2B visas;

g.      Failed to reimburse Plaintiffs, in their pay for their first workweek, for their travel, visa, visa-processing, border-crossing, and other related expenses, to the extent that the failure to reimburse such expenses drove Plaintiffs' wages below the minimum and overtime wage rates mandated by the FLSA;

h.      Failed to reimburse Plaintiffs, in their pay for their first workweek, for all of Plaintiffs' visa, visa-processing, border-crossing, and other related expenses, as promised in the contract;

i.      Failed to reimburse Plaintiffs, when they had constructively completed 50% of their contract period, for their transportation and daily subsistence expenses from the place in Mexico where each Plaintiff came to work for Defendants to the job site in Jasper, Texas;

j.      Charged Plaintiffs for the work-related supplies and equipment;

k.    Failed to maintain accurate and adequate records, with respect to each Plaintiff's earnings, as required by the FLSA, the AWPA, and the H-2B regulations;

l.    Failed to furnish Plaintiffs on or before each payday with a written pay statement showing all information required by the FLSA, the AWPA, and the H-2B regulations.

m.    Failed to provide each Plaintiff with a copy of the job order;

n.    Failed to post at Plaintiffs' place of employment the notices of workers' rights required to be posted by the FLSA, the AWPA, and the H-2B regulations;

o.    Failing to prohibit the payment of any kind by any Plaintiff to Defendants or their attorneys, agents, and employees for any activity related to obtaining H-2B labor certification or employment, and in fact mandating, acquiescing in, or ratifying such payments;

p.    Failed to prohibit, by written contract between Defendants and all agents or recruiters engaged, directly or indirectly, by Defendants in recruiting Plaintiffs, seeking or receiving payments or other compensation from Plaintiffs, and in fact mandated, acquiesced in, or ratified such payments; and

q.    Failed to comply with all applicable federal, state, or local employment-related laws and regulations, including health and safety laws and the TVPRA's prohibition against employers or their agents knowingly holding, destroying, or confiscating workers' passports, visas, or other immigration documents.

163.    Defendants' material breaches of Plaintiffs' employment contract caused Plaintiffs damages.

164.     Defendants are liable to Plaintiffs for damages, including expectancy, reliance, consequential, and restitution damages, on account of Defendants' breaches, plus costs and reasonable attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code Ch. 38.

## COUNT IV: TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT – FORCED LABOR

165.     Plaintiffs reassert and incorporate by reference the allegations set forth above.

166.     It is unlawful to obtain the labor or services of a person (1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the person to believe that if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or (3) by means of the abuse or threatened abuse of law or the legal process. 18 U.S.C. § 1589.

167.     In 2017, Defendants subjected Plaintiffs to forced labor in violation of 18 U.S.C. § 1589.

168.     In violation of 18 U.S.C. § 1589, Defendants knowingly attempted to and did obtain the labor and services of Plaintiffs using a scheme, plan, or pattern that was intended to coerce and did coerce Plaintiffs to believe that they or their relatives would suffer serious harm if they were to leave Defendants' employment.

169.     To coerce Plaintiffs into continuing to work for Defendants, Defendants falsely threated Plaintiffs with adverse immigration consequences for leaving Defendants' employ, threatened Plaintiffs physically, threatened Plaintiffs Efren Mendoza-Juarez, Eduardo Mosqueda-Castillo, and Juan Mosqueda-Guerrero that they would go to jail if they left, and deceived Plaintiffs in a manner that constitutes an abuse of the legal process under 18 U.S.C. § 1589.

170.     Plaintiffs suffered damages on account of Defendants' violations of 18 U.S.C. § 1589.

171.     Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages, including

punitive damages, for Defendants' violations of 18 U.S.C. § 1589, plus costs and reasonable

attorney's fees.

**COUNT V: TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT –
UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS IN FURTHERANCE OF
TRAFFICKING AND FORCED LABOR**

172.     Plaintiffs reassert and incorporate by reference the allegations set forth above.

173.     It is illegal under 18 U.S.C. § 1592 to knowingly destroy, conceal, remove, confiscate, or

possess the immigration documents of an individual in the course of violating, or with the intent

to violate, 18 U.S.C. §§ 1589–1590.

174.     Defendants violated 18 U.S.C. § 1592 when they knowingly confiscated and possessed

Plaintiffs' passports and visas in order to obtain Plaintiffs' coerced labor and services.

175.     Plaintiffs suffered damages on account of Defendants' violations of 18 U.S.C. § 1592.

176.     Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages, including

punitive damages, for Defendants' violations of 18 U.S.C. § 1592, plus costs and reasonable

attorney's fees.

**COUNT VI: TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT –
UNLAWFUL CONDUCT WITH RESPECT TO IMMIGRATION DOCUMENTS**

177.     Plaintiffs reassert and incorporate by reference the allegations set forth above.

178.     It is illegal under 18 U.S.C. § 1597 to destroy, conceal, remove, confiscate, or possess the

immigration documents of an individual in the course of violating or with the intent to violate 18

U.S.C. § 1351 or in the course of maintaining, preventing, or restricting the labor of an

individual without lawful authority.

179.    Defendants violated 18 U.S.C. § 1597 when they knowingly confiscated and possessed Plaintiffs' passports and visas without lawful authority in order to maintain and restrict Plaintiffs labor and services and in the course of violating or with the intent to violate 18 U.S.C. § 1351.

180.    Plaintiffs suffered damages on account of Defendants' violations of 18 U.S.C. § 1597.

181.    Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages, including punitive damages, for Defendants' violations of 18 U.S.C. § 1597, plus costs and reasonable attorney's fees.

## COUNT VII: TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT – TRAFFICKING WITH RESPECT TO FORCED LABOR

182.    Plaintiffs reassert and incorporate by reference the allegations set forth above.

183.    "Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter," including the laws prohibiting forced labor, has engaged in unlawful behavior under the TVPRA, 18 U.S.C. § 1590.

184.    In 2016 and 2017, Defendants violated 18 U.S.C. § 1590 by recruiting, transporting, and obtaining Plaintiffs' labor in violation of 18 U.S.C. § 1589's prohibition on forced labor and the document-holding provisions of the TVPRA, 18 U.S.C. §§ 1592 and 1597.

185.    Plaintiffs suffered damages on account of Defendants' violations of 18 U.S.C. § 1590.

186.    Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages, including punitive damages, for Defendants'' violations of 18 U.S.C. § 1590, plus costs and reasonable attorney's fees.

## COUNT VIII - TEXAS FORCED LABOR STATUTES

187.    Plaintiffs reassert and incorporate by reference the allegations set forth above.

188.    Whoever "traffics" another person with the intent that the trafficked person engage in "forced labor or services," including labor or services provided by another person and "obtained

through another's use of force, fraud, or coercion," or who "receives a benefit from a venture that involves such trafficking," has violated Tex. Civ. Prac. & Rem. Code Ch. 98 and Tex. Penal Code Ch. 20A and is civilly liable to the person trafficked.

189.    By the conduct set forth above, Defendants trafficked Plaintiffs in violation of Tex. Civ. Prac. & Rem. Code Ch. 98 and Tex. Penal Code Ch. 20A.

190.    Plaintiffs suffered damages on account of Defendants' violations of Texas forced labor legislation.

191.    Pursuant to Tex. Civ. Prac. & Rem. Code § 98.003, Plaintiffs are entitled to recover damages, including exemplary damages, for these violations by Defendants, as well as costs and reasonable attorney's fees.

## COUNT IX – FRAUD

192.    Plaintiffs reassert and incorporate by reference the allegations set forth above.

193.    In recruiting Plaintiffs for employment by Defendants in the United States, Defendant ASFS and Defendant Abel Sanchez material misrepresentations about the employment that it knew or should have known were false.

194.    Defendant ASFS and Defendant Abel Sanchez fraudulently made these misrepresentations to induce Plaintiffs to accept jobs with Defendants.

195.    Defendant ASFS and Defendant Abel Sanchez had no intention of performing these promises.

196.    Plaintiffs reasonably relied on the misrepresentations of Defendant ASFS and Defendant Abel Sanchez and accepted employment with Defendants.

197.    Plaintiffs suffered damages on account of the fraud of Defendant ASFS and Defendant Abel Sanchez.

198.    Plaintiffs are entitled to equitable relief such as restitution and to recover damages, including exemplary damages, arising out of the fraud of Defendant ASFS and Defendant Abel Sanchez.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant them the following relief:

a.    Declare that Defendants violated the rights of Plaintiffs under the FLSA, AWPA, TVPRA, and Texas forced labor statutes, and breached their contracts with Plaintiffs;

b.    Award Plaintiffs their unpaid minimum and overtime wages and an equal amount as liquidated damages for Defendants' violations of the FLSA;

c.    Award Plaintiffs their actual damages or, alternatively, statutory damages of $500 per person per violation for Defendants' violations of the AWPA;

d.    Award Plaintiffs compensatory, and punitive or exemplary damages, for Defendants' violations of the TVPRA and Texas forced labor statutes;

e.    Award Plaintiffs their actual, incidental, and consequential damages resulting from Defendants' breaches of Plaintiffs' employment contracts;

f.    Award Plaintiffs restitution or other equitable relief, as well as their actual and exemplary damages, resulting from the fraud of Defendant ASFS and Defendant Abel Sanchez;

g.    Award Plaintiffs their expenses and costs of court, as well as their reasonable attorney's fees pursuant to 29 U.S.C. § 216(b), 18 U.S.C. §§ 1590 and 1595, Tex. Civ. Prac. & Rem. Code § 93.003(a)(2)–(3), and Texas Civ. Prac. & Rem. Code Ch. 38;

h.    Award Plaintiffs pre- and post-judgment interest as allowed by law; and

i.    Award Plaintiffs such other and further relief as this Court deems just and proper.

Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

*/s/ Lakshmi Ramakrishnan*
Lakshmi Ramakrishnan
Texas Bar No. 24037324
Texas RioGrande Legal Aid, Inc.
301 S. Texas Ave.
Mercedes, Texas 78570
Telephone: (956) 447-4850
Facsimile: (956) 825-7035
Email: lramakrishnan@trla.org

*/s/ William Grigg*
William Grigg
Texas Bar No. 24097769
Texas RioGrande Legal Aid, Inc.
1111 N. Main Ave.
San Antonio, Texas 78212
Telephone: (210) 212-3700
Facsimile: (210) 229-9328
Email: wgrigg@trla.org

*/s/ Douglas L. Stevick*
Douglas L. Stevick
Texas Bar No. 00797498
Texas RioGrande Legal Aid, Inc.
5439 Lindenwood Ave.
Saint Louis, Missouri 63109
Telephone: (314) 449-5161
Email: dstevick@trla.org

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2019, I filed the foregoing with the Clert of the Court through the CM/ECF system, which will serve notice of the filing on all CM/ECF users in this case.

/s/ Lakshmi Ramakrishnan
Lakshmi Ramakrishnan